UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BUCKLEY AND NANCY BUCKLEY,<br><br>            Plaintiffs,<br><br>v.<br><br>DJO SURGICAL (f/k/a ENCORE MEDICAL L.P.), and DOES 1 through 20, inclusive,<br><br>            Defendants. | Case No. 11-CV-2804-L-MDD<br><br>**ORDER GRANTING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [doc. #24]** |

This action arises out of Plaintiff Robert Buckley's total knee replacement surgery (arthroplasty procedure) performed in 2000. Plaintiffs allege that the Encore mechanism that was implanted into his leg during that procedure was defective and resulted in pain and eventual disability.

On July 2, 2012, Defendant Encore Medical GP, LLP ("Encore") moved for judgment on the pleadings stating that the Plaintiffs Robert Buckley and Nancy Buckley's claims were barred by the statute of limitations, insufficiently pleaded, and not valid as a matter of law. The motion

has been fully briefed.

For the following reasons, the Court will grant Defendants' motion for judgment on the pleadings. (Doc. #24.)

**I.      BACKGROUND**

On December 15, 2000, Plaintiff Robert Buckley underwent a total knee replacement arthroplasty on his left knee. (Compl. ¶ 6.) The prosthetic knee was manufactured by Defendant Encore. (*Id*.) Beginning in June of 2001, Mr. Buckley began to complain of a problem with his knee and had an x-ray and examination to discover the cause. (Compl. ¶ 7.) At that time, the treating physician did not indicate any suspicion that the replacement part was the cause of Mr. Buckley's discomfort. (*Id*.) Mr. Buckley continued to pursue treatment when the pain failed to dissipate. (Compl. ¶ 7-15.)

On April 15, 2002, Plaintiff went in for repeat x-rays and this time his physician thought the cause was a lack of healing from the original arthroplasty procedure. (Compl. ¶ 9.) Once again, there was no indication that the Encore knee part was defective. In fact, this was not suspected in any of Mr. Buckley's following visits, though he was diligent about seeking medical help over the years. (Compl. ¶ 7-15.) The medical records indicate a variety of theories about his condition, but most are related to arthritis and general degeneration. (*Id*.)

On January 26, 2006, Mr. Buckley returned to the doctor for examination of the knee. (Compl. ¶ 14.) His doctor declared him disabled and unable to continue in his line of work. (*Id*.) At this time, however, his doctor indicated in his notes that Mr. Buckley's condition had not been "cured by the surgical intervention." (*Id*.) Even at that point, the Encore knee part was not suspected as having caused Mr. Buckley's condition. Rather, the diagnosis indicated that the knee condition the arthroplasty procedure was supposed to have cured was still persisting.

On February 5, 2007, the Plaintiff returned to his orthopedist where it was determined that he would probably require further surgery at some point in the future. (Compl. ¶ 15.) There was no discussion of the Encore knee at this time. April 5, 2010 was the first time the Encore part was suspected as the cause of Plaintiff's pain. (Compl. ¶ 16.) During x-rays taken at that visit, the treating physician, Dr. Tsourmas, noticed that the knee replacement part was showing

irregular wear. (*Id.*)

On October 28, 2010, Mr. Buckley met with Dr. David Dodgin. (Compl. ¶ 17.) It was not until this date that he was diagnosed with a "mechanical complication of internal orthopedic device." (*Id.*) The doctor recommended a revision surgery. (*Id.*) On November 30, 2010, the Plaintiff underwent revision surgery and it was discovered that the Encore knee part had broken down. (Compl. ¶ 18.) On December 10, 2010, due to the condition of the knee, he underwent a second knee replacement surgery. (*Id.*)

## II.   LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion for judgment on the pleadings is evaluated under the same standard applicable to motions to dismiss brought pursuant to Rule 12(b)(6). *See Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997). Accordingly, the standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) applies to a motion for judgment on the pleadings. *Lowden v. T-Mobile USA Inc.*, 378 Fed. App'x. 693, 694 (9th Cir. 2010) ("To survive a Federal Rule of Civil Procedure 12(c) motion, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)).

When deciding a motion for judgment on the pleadings, the Court should assume the allegations in the complaint are true and construe them in the light most favorable to the plaintiff. *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994). A judgment on the pleadings is appropriate when, accepting the allegations made in the complaint as true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

/ / /

/ / /

/ / /

/ / /

### III.   DISCUSSION

#### A.   The Statute of Limitations Does Not Bar Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, and Eighth Claims.

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110-11 (1988). The statute of limitations begins to run once the plaintiff "has notice or information of circumstances to put a reasonable person on inquiry." *Id.*; *See also Gutierrez v. Mofid*, 39 Cal.3d 892, 896 (Cal. 1985); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 806-807 (2005).

California Civil Procedure Code § 335.1 provides a two-year statute of limitations for intentional and negligent tort actions, but the accrual of time is subject to the California delayed discovery rule. *Soliman v. Philip Morris*, 311 F.3d 966, 971 (9th Cir. 2002). Under this rule, "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." *Jolly,* 44 Cal.3d at 1110.  "A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *Id.* at 1109.

Under the delayed discovery rule, the statute of limitations did not begin to run until, at the earliest, April 5, 2010, when Plaintiff's orthopedist noted "early polyethylene wear." (Compl. ¶ 16.) The Plaintiff, through no fault of his own, could not have been aware that a defective Encore part was the cause of his injury prior to this visit. On October 28, 2010, Plaintiff visited another specialist, Dr. David Dodgin, who diagnosed him with a "mechanical complication" of the Encore device. (Compl. ¶ 17.) On December 10, 2010, this diagnosis was confirmed via surgery. (Compl. ¶ 18.) Looking to either of these two 2010 dates, Plaintiff was well within the statute of limitations when he filed his Complaint in December of 2011.

Defendant contends that "any reasonable person would have suspected tortious conduct was causing" Plaintiff's injuries and asks this Court to find that Plaintiff should have suspected the Encore part was causing his pain as far back as 2000 or 2001. (Doc. #29 at 3.) This assertion ignores the fact that Plaintiff underwent the arthroplasty procedure in the first place due to

arthritic pain. (Compl. ¶ 14.) There is no indication that the pain he experienced after the procedure was new or different. The instant case is not a situation in which a man experienced a new pain and should have easily identified the source, as Defendant would have the Court believe.

Plaintiff had suffered from an arthritic condition in his knee prior to the procedure and, along with his physicians, believed that the arthroplasty had simply failed to remedy the condition. *Id*. A reasonable person would rigorously pursue medical assistance when dealing with a persistent pain just as Mr. Buckley did. It would be unreasonable for this Court to expect greater than diligent pursuit of medical care. The delayed discovery of the source of Plaintiff's pain was through no fault of his own and the delayed discovery rule applies. Therefore, Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, and Eighth claims are not time barred.

**B.   The Statute of Limitations Bars Plaintiffs' Seventh Claim of a Violation of California Business & Professions Code § 17200, *et seq*.**

Plaintiffs have stated that the four-year statute of limitations of the California Business & Professions Code § 17200, otherwise known as the California Unfair Competition Law ("UCL"), should also follow the delayed discovery rule. (Pls.' Opp'n. 9:15-19.) The relevant section provides: "Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued." CAL. BUS. & PROF. CODE § 17208. While there has been some disagreement in California courts about the application of the delayed discovery rule to this provision,[1] the Ninth Circuit has interpreted the provision to mean that the clock would begin "to run on the date the cause of action accrue[s], not the date of the discovery." *Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002). In other words, as the California Supreme Court has not yet decided this question,

---

[1]*Compare*, *Snapp & Assoc. Ions. Serv., Inc. v. Robertson*, 117 Cal. Rptr. 2d 331, 335 (Cal. Ct. App. 2002) (discovery rule does not apply to UCL cases); *Massachusetts Mutual Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1295 (discovery rule "probably" applies to UCL cases); *Broberg v. Guardian Life Ins. Co. of America*, 171 Cal. App. 4th 912, 920 (applied delayed discovery rule to UCL claim based on Defendant's allegation of deceptive marketing materials and sales practices).

this Court must follow the Ninth Circuit's interpretation found in *Karl Storz*. Accordingly, Plaintiffs' seventh claim is time barred as the cause of action would have accrued beginning as far back as 2000, when the device was implanted.

### C. **Plaintiffs Have Inadequately Pleaded Their First, Second, Third, Fourth, Fifth, and Sixth Claims Against Defendants by Failing to Claim a Defect.**

Plaintiffs' claims for Strict Product Liability (Manufacturing Defect), Strict Product Liability (Failure to Warn), Negligence, Breach of Express Warranty, Breach of Implied Warranty, and Fraud are all based on the existence of a defect and, consequently, all fail as a matter of law as Plaintiffs have neglected to indicate what the defect in the Encore knee was. A strict product liability manufacturing defect claim must include: an allegation (1) that the device at issue contained a manufacturing defect at the time at which it left the defendant's control; (2) that the device was used in a reasonably foreseeable manner to the defendant; (3) there was a harm to the plaintiff, and; (4) that the defect was the cause of, or substantial factor in, the plaintiff's harm. CACI No. 1201. *See also Barker v. Lull*, 20 Cal. 3d 413, 427 (1978) (discussing the *Greenman* test: a plaintiff must show a defect and indicate how the defect is the proximate cause of his injury); *Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121 (1972) (liability for products that are "adjudged 'defective'"); *Brown v. Superior Ct.*, 44 Cal. 3d 1049 (1988) (declining to extend *Barker* to prescription drugs).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. Over the course of the Plaintiffs' Complaint, there is lengthy discussion about the lead-up to the discovery of the broken device, but there is no clear statement of what the defect is. Under *Twombly*, a plaintiff must accompany his or her allegations with enough factual information to make the claim appear plausible. "Naked assertion[s]" without "further factual enhancement" are insufficient to meet this standard. *Twombly*, at 557. Factual support for Plaintiffs' claims are lacking here as there is no clear statement as to how the mechanism is defective. Without a clear and concise statement of what the defect is, all of the products liability related claims fail as a matter of law. Further, Plaintiff's fraud claim fails to meet the pleading standard of Rule 9. *Erickson v. Boston*

*Scientific Corp.*, 846 F.Supp.2d 1085, 1090 (C.D.Cal. 2011).

### D. Plaintiffs' Failure to Warn, Fraud, Breach of Implied, and Breach of Express Warranty Claims All Fail as a Matter of Law as they are Barred by the Learned Intermediary Doctrine.

Plaintiffs have claimed that Defendant breached its duty to warn the "consuming public and end-user patients" of potential defects such as premature wear of the polyethylene tibial insert component. (Compl. ¶ 43, 72) There is no such duty, as where there is a learned intermediary, in this case a physician, the duty to warn extends only from the manufacturer to the physician and not to the patient or consuming public. *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (Cal. 1996). *See also Barker*, 20 Cal. 3d at 427; *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 17-18 (1992). Furthermore, this rule extends to claims for breach of implied and express warranty. *Carlin*, 13 Cal. 4th at 1118. Because the fraud claim is based on this same framework of duty, it also applies only to the relationship between the Defendant and the physician or hospital and not to the Plaintiff. *Id* at 1134. Therefore, as a matter of law, Plaintiffs' claims for failure to warn, fraud, and breach of implied and express warranty all fail.

### E. Plaintiffs' Loss of Consortium Claim Fails as a Matter of Law as it is Derivative of the Underlying Failed Claims.

As Mr. Buckley's claims have all been dismissed, there is no longer any basis for Mrs. Buckley's loss of consortium claim. Therefore, because her claim is derivative of the other failed claims, her claim now fails as a matter of law.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS WITHOUT PREJUDICE** Defendant's motion for judgment on the pleadings. (Doc. #24.) The Court hereby **GRANTS** Plaintiff **LEAVE TO AMEND**. But Plaintiffs are advised that "Rule 11 authorizes a court to impose a sanction on any attorney, law firm, or party that brings a claim for an improper purpose or without support in law or evidence." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638-39 (9th Cir. 2010). Plaintiffs are also advised that Rule 8 demands a "short and plain statement of

///

///

the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8, and Rule 9 requires pleading fraud with specificity. FED. R. CIV. P. 9. If Plaintiffs decide to file an amended complaint, they must do so by October 22, 2012.

**IT IS SO ORDERED.**

DATED: October 3, 2012

M. James Lorenz
United States District Court Judge

COPY TO:

HON. MITCHELL D. DEMBIN
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL